**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MALIBU MEDIA, LLC,

                Plaintiff,

v.

JOHN DOE subscriber assigned IP address
70.109.60.2,

                Defendant.

**CASE NO. 1:14-cv-1169-TSE/JFA**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION AND TO QUASH THIRD-PARTY SUBPOENA

### I.     INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion to quash because Defendant has not provided a valid reason to quash the subpoena under Fed. R. Civ. P. 45.  Plaintiff has not joined any defendants in this case and does not intend to harass or embarrass Defendant. Indeed, if Defendant wishes to proceed anonymously in this litigation Plaintiff will not oppose it. Plaintiff is not filing this case for any purpose other than to protect its valid copyrights.

Federal courts have consistently permitted copyright owners to identify Doe Defendants through a Rule 45 subpoena.  Here, a ruling to the contrary would undermine the rights of copyright owners by denying them the tools necessary to identify on-line infringers.  Without the ability to identify on-line infringers, suits cannot be brought and rights cannot be enforced. For these reasons, as more fully explained below, Plaintiff respectfully requests that the Court deny Defendant's motion so that it may identify the John Doe Defendant.

### II.    FACTS

A. <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* CM/ECF 4-2 at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id*. at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent. *Id*. at ¶ 19. Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id*. at ¶ 27. Despite sending thousands of DMCA notices per week, the infringement continues. *Id*. at ¶ 28. And, if one searches for "X-Art" on a torrent website the

site will reveal thousands of unauthorized torrents available for free.  *Id*.  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified.  Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."  *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).  Last year, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial.  *See Id*.  In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*."  Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

B.  Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works."  *Id.* (Emphasis in original).  Similarly, the Honorable Judge Hegarty of the District of Colorado has stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement."  *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

3

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

C. The Infringer

Defendant's Internet was used to infringe twenty (20) of Plaintiff's copyrighted works between January 13, 2014 and August 21, 2014. *See* CM/ECF 1-1. Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of several months. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby. It was someone with access to Defendant's Internet for a long period of time, consistently.

On October 23, 2014 counsel for Defendant emailed undersigned and communicated facts similar to in his motion describing the subscriber. The next day undersigned wrote to him and stated, "If your client is not responsible, we will not proceed against them. Please provide your

clients name and address for an expeditious investigation." *See* Exhibit A. Plaintiff did not solicit settlement nor otherwise threaten or harass Defendant as his motion claims. Plaintiff is simply trying to learn the facts and determine whether or not to proceed with litigation.

**III.   THIS COURT SHOULD NOT QUASH THE SUBPOENA**

Fed. R. Civ. P. 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. *See Fed. R. Civ. P. 45(c)(3)(A)(i-iv)*. The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. *See Fed. R. Civ. P. 45(c)(3)(B)(i-iii)*. "No other grounds are listed." *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at *2 (D. Colo. 2013) (denying motion to quash in similar BitTorrent copyright infringement action where defendant's motion failed to articulate a reason to quash the subpoena that complied with Rule 45).

Recently, the District Court of Maryland ruled on similar issues before this Court, denying a Defendant's motion to quash.

> The Defendants have standing to contest the subpoenas to the third party, but their ultimate arguments relate to proof of wrongdoing, or lack thereof. The Plaintiff is not required to prove its contentions at this stage. It has presented colorable claims that each of the Defendants have illegally downloaded Plaintiff's copyright-protected product. Plaintiffs are entitled to move forward to the next stage in this litigation.

*Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 6577039 (D. Md. Dec. 12, 2013).

A.   A Denial of Infringement Is Not a Valid Reason to Quash a Subpoena

Defendant's motion to quash is based largely on a denial.   "[I]t is well-settled that such general denials of liability cannot serve as a basis for quashing a subpoena." *Malibu Media, LLC v. Doe*, No. CIV. WDQ-14-0252, 2014 WL 2879326, at *2 (D. Md. June 23, 2014). "Additionally, the subscriber is being subpoenaed for information as to who may have infringed the copyright when using that IP address. If the subscriber is later named as the defendant in this case, he will have an opportunity to contest the merits of the case then." *Id. See also Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 35 (D.D.C. 2011) ("A general denial of engaging in copyright infringement is not a basis for quashing the plaintiff's subpoena.") The Court in *Voltage* noted that general denials of liability were not a basis to quash a subpoena and prevent Plaintiff from learning the identity of the subscriber of the IP address.  If this were the case, Plaintiff would be denied critical information necessary in order to address the merits of the claim.

B.   Plaintiff's Discovery is Relevant

This Court granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against them.   Plaintiff has requested only the identifying information of Defendant from his ISP.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. The information sought is thus highly relevant to the plaintiff's claims.

*Raw Films, Ltd. v. John Does 1-15*, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).

Even if the subscriber is not the infringer, Rule 26 of the Federal Rules of Civil Procedure

provides for broad discovery.  Rule 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter."  *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. 2012) (holding that although the subpoena may only identify the subscriber and may not reveal the infringer's identity, the subpoenas are a proper use of discovery.).  *See also e.g. Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 at *9 (E.D. Pa. 2012) (denying motion to quash subpoena in similar BitTorrent copyright infringement case holding that the relevancy standard was satisfied); *Malibu Media, LLC v. John Does No. 1-30*, 2012 WL 6203697 at *4 (D.N.J. 2012) (same).  "Relevance is a broad concept at the discovery phase . . . The identity of the customers associated with the Alleged IP addresses is relevant under this standard . . . The subpoenas to the ISP, therefore, are a proper use of discovery." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *4 (C.D. Ill. 2012).  Here, it is likely Defendant is either the infringer or knows who the infringer is and can provide Plaintiff with relevant information to aid Plaintiff in identifying the infringer.

C.   Defendant's IP Address is the Only Way to Identify the Infringer

Defendant attempts to quash the subpoena on the basis that the subscriber may not be the infringer.  This premise, however, has been specifically rejected by courts in the Fourth Circuit. "While [Defendant] is free to present evidence to corroborate his denial of liability, and then move to dismiss the claims asserted against him, the court cannot quash a subpoena on these grounds." *Patrick Collins, Inc. v. Does 1-7*, 2012 WL 1150827, at *9 (D. Md. 2012).  *See also Patrick Collins, Inc. v. Does 1-10*, 2012 WL 1144980, at *8 (D. Md. 2012) (same); *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010) ("the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011) (denying motion to

quash holding that denials of liability are premature and are not "relevant as to the validity or enforceability of a subpoena[.]")  Even if Defendant is not the infringer, it is highly likely the infringer is in Defendant's home, or Defendant knows the identity of the infringer.  This Court should not allow Defendant to hide this information from Plaintiff before Defendant's identity is even known.

D. Plaintiff's Interest In Obtaining the Information in the Subpoena Outweighs Defendant's Privacy Interest

"[C]ourts have consistently held that Internet subscribers do not have a protected privacy interest in their subscriber information—including names, addresses, phone numbers, and e-mail address—which they have already conveyed to their ISPs." *Patrick Collins, Inc. v. Does 1-10*, JFM 8:12-CV-00094, 2012 WL 1144980, *9 (D. Md. Apr. 4, 2012) (declining to quash a subpoena).  "I find no cognizable privacy interest in defendants' subscriber information—the only potential basis to quash in this case—Doe defendant # 1's motion is denied." *Id.*  Likewise, the Honorable Judge Williams denied a motion to quash, conscious of Plaintiff's rights to pursue its copyright infringement suit.  *See Third Degree Films, Inc. v. Does 1-118*, 11-CV-03006-AW, 2011 WL 6837774 (D. Md. Dec. 28, 2011) ("the Court permitted Plaintiff to serve subpoenas on ISPs so that Plaintiff may identify the Doe Defendants responsible for the alleged infringement. Such identification is necessary so that Plaintiff may pursue these actions and enforce its legal rights to distribute its pornographic motion picture by obtaining a remedy against infringers").

E. Plaintiff Does Not Publically Embarrass Defendants and Always Agrees to Allow a Defendant to Proceed Anonymously

Defendant wrongly states that Plaintiff's purpose for this suit is to embarrass Defendant in the hopes of obtaining a settlement.  First, Plaintiff has no intention of embarrassing Defendant

8

and does not ever object to the Court allowing a defendant to proceed anonymously from the public view and remain as John Doe.  Second, Plaintiff does not solicit settlements prior to serving a defendant with the Complaint and in all of its individual suits against a defendant, has only settled prior to serving when the defendant has initiated the request.  Indeed, this is Malibu Media's nationwide policy.

Defendant's criticism of Plaintiff's suits rests largely on prior copyright BitTorrent cases with multiple defendants joined in one action, making the ability to litigate against multiple defendants nearly impossible.  Here, Plaintiff has filed suit against only Defendant.  Should the Court seek to impose restrictions similar to the District Court of Maryland requiring Plaintiff to seek leave of Court to settle with an unrepresented defendant or allow all defendants to proceed anonymously, Plaintiff will not oppose.  *See e.g. Malibu Media, LLC v. Doe*, No. 14-CV-00223-MJG, 2014 WL 4682793, at *1 (D. Md. Sept. 18, 2014) ("The Court's standard order in these cases (1) creates a procedure for ISP subscribers to anonymously move to quash the subpoena served on the ISP, (2) includes provisions prohibiting Malibu from contacting unrepresented John Does for settlement negotiations, and (3) specifies other protections for subscribers. To the best of this Court's knowledge, Malibu has complied with these procedures and this Court is unaware of any allegations of abuse in this district.")

Recently, the Middle District of Florida found that "the mere act of releasing Defendant's identity to Plaintiff will not necessarily cause Defendant to be impugned" and that Defendant may seek a protective order.

> The Court recognizes that Defendant is understandably concerned that his or her name will be impugned (incorrectly or otherwise) by being associated with the allegations in the Complaint. Quashing the subpoena, however, is not the correct avenue for protecting Defendant from the embarrassment associated with the nature of pornography. Indeed, the mere act of releasing Defendant's identity to Plaintiff will not necessarily cause Defendant to be impugned, and Defendant remains free

to separately seek protection from any undue harassment or burden that may potentially result as a consequence of permitting the subpoena to issue.

*Malibu Media, LLC v. Doe,* No. 8:14-CV-874-T-36AEP, 2014 WL 5599105, at *3 (M.D. Fla. Nov. 3, 2014).  Likewise, Plaintiff is willing to consent to any measures Defendant wishes to protect his privacy so long as Plaintiff can learn Defendant's identity and proceed with its case in order to adjudicate its claims and protect its copyrights.

   F.   Defendant's Cases Are Distinguishable

   1.   *VPR International v. Does 1-1017 is Inapplicable*

Defendant relies on an opinion from the Central District of Illinois to support his theory that Plaintiff's subpoena should be quashed.  *See* Def's Mot. citing *VPR Internationale v. Does 1-1017,* 2:11-cv-02068, (C. Ill. April 29, 2011) (Exhibit D).  *VPR Internationale* involved 1,017 defendants grouped into one case, and lacked proper personal jurisdiction and venue.  This case does not suffer from the same procedural problems.  Indeed, the Honorable Judge Cudmore, from the same court, distinguished *VPR Internationale*, noting that it involved a Class Action with improper personal jurisdiction and that suits like Plaintiff's are not fishing expeditions.  *See Patrick Collins, Inc. v. John Does 1-9,* 12-CV-3161, 2012 WL 4321718 (C.D. Ill. 2012).

> The *VPR Internationale* case, however, was significantly different from this case. The plaintiff in that case, VPR Internationale, sought to commence a class action against all persons everywhere who used the BitTorrent protocol to infringe on any of VPR Internationale' copyrighted motion pictures. VPR Internationale did not allege that any of the 1,017 IP addresses had been used to upload or download the same unique copy of any of VPR Internationale's copyrighted works. VPR Internationale did not allege that it had identified even one IP address that was used within the District to infringe on one of its copyrights, let alone one who would be an appropriate class representative. Under these circumstances, this Court found that the request for authority to issue subpoenas before the Rule 26(f) conference was little more than a fishing expedition and an abuse of the discovery process. *VPR Internationale,* 2011 WL 8179128, at *1–2.

> In this case, Collins is not engaged in a fishing expedition. Collins has identified nine Alleged IP Addresses, not 1,017. These Alleged IP Addresses were all used to download and upload the same unique copy of the Work. The Alleged IP Addresses

were all traced to addresses within the District. The subpoenas only seek information on these nine Alleged IP Addresses that allegedly were used illegally within the District. Collins' limited subpoenas are proper. The rationale of the *VPR Internationale* case does not apply herein.

*Id.* at *4.  (Emphasis added).

### 2.  *Malibu Media v. Doe (S.D. Fla.) Failed to Take Plaintiff's Well Pled Facts as True*

Defendant relies on a Southern District of Florida's previous ruling, which held "Plaintiff has not shown how this geolocation software can establish the identity of the Defendant. There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district." *See Malibu Media v. John Doe*, 1:14-cv-20213-UU (S.D. Fla. March 20, 2014).  Respectfully, Plaintiff suggests that the court erred in the Southern District of Florida case.  The statement "[t]here is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district" is simply not true.  Plaintiff pled that the person actually downloading and viewing Plaintiff's movies is the subscriber and owner of the IP address. This allegation is not only plausible it is true the vast majority of cases.  Indeed, Plaintiff proved it to be true in the Bellwether trial and has had numerous subscribers admit to committing the infringement, some of whom have even filed public allocutions.

This Court's order correctly found that Plaintiff had established "good cause" for expedited discovery to determine Defendant's identity and reflected the overwhelming view that Plaintiff is entitled to move forward with its case.  *See* CM/ECF 6 ("Plaintiff has established that "good cause" exists to serve a third party subpoena.")  This represents the view of every court in the Fourth Circuit and the vast majority throughout the country in Plaintiff's cases.

Toward that end, other courts have specifically disagreed with the Southern District of Florida order cited by Defendant.  The Eastern District of Pennsylvania, when considering a similar motion to quash which relied on the 14-cv-20213-UU opinion, found "[t]he arguments that John Doe raises

concerning the link between the actual infringer and the IP address or MAC address do not undermine the plausibility of Malibu Media's claim or defeat that claim as a matter of law -- rather, John Doe raises factual issues about identity more properly dealt with during discovery." *Malibu Media v. John Doe*, 2:14-cv-01280-SD (E. D. Pa. May 19, 2014). Another judge in the Southern District of Florida likewise dismissed the ruling, finding "Malibu Media has alleged a plausible link between the subscriber … and the copyright infringement, and any factual disputes are inappropriate at this stage." *Malibu Media v. John Doe*, 14-cv-20393 (S.D. Fla. July 17, 2014). "Malibu Media also identifies a compelling reason to permit this action to proceed: this is the only avenue available to Malibu Media to protect its copyrights." *Id.*

3. *Discount Video Center v. Does 1-5041 and Combat Zone Inc. v. Does 1-22 Are Inapplicable*

*Discount Video Center, Inc. v. Does 1-5041*, 11-cv-2694 (N.D. Cal. Sept 23, 2011) and *Combat Zone, Inc. v. Does 1-22*, No. CIV.A. 12-30086-MAP, 2013 WL 1092149, at \*6 (D. Mass. Feb. 15, 2013) are both distinguishable from the case at hand because each case joins dozens to thousands of defendants together in one action based on a single date of infringement. Indeed, in *Combat Zone* the court found discovery would have been proper had the plaintiff prepared a proper subpoena to the defendants that did not request settlement. "The Court does note that *proper* discovery of the identities of the subscribers is permissible. However, the Court finds that the subpoenas do not comply with the Federal Rules of Civil Procedure." *Combat Zone, Inc. v. Does 1-22*, No. CIV.A. 12-30086-MAP, 2013 WL 1092149, at \*6 (D. Mass. Feb. 15, 2013). Both of these cases were impossible to litigate and called into question the plaintiff's motives. Here, Plaintiff is suing one individual whose IP address infringed Plaintiff's movies for months. Plaintiff has not solicited any settlement. Upon learning Defendant's identity, if it has a proper basis to proceed and litigate the case after an investigation, Plaintiff will do so.

   4.  *The Eastern District of New York Court Found the Plaintiff's Allegations "Plausible"*

Defendant relies heavily on *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012), a case out of the Eastern District of New York where the Honorable Judge Brown severed cases by Plaintiff and others in similar suits and called into question whether an IP address could accurately identify an infringer.  Defendant, however, fails to note that in that <u>very same case</u>, a similar motion to dismiss was denied on the basis that the plaintiff's claim for relief was plausible.  *See Patrick Collins, Inc. v. John Doe 1*, 2013 WL 2177787 (E.D.N.Y. May 18, 2013).  "In the Court's view, the Plaintiff has adequately pled a plausible claim of copyright infringement by providing sufficient detail as to the acts the John Doe Defendant took in infringing the copyright." *Id.*  The Court found that alleging a claim against the subscriber of an IP address is sufficient to survive a motion to dismiss and stated:

> [T]he difficulty that the Plaintiff will ultimately have in proving that the individual John Doe Defendant was the one who actually utilized the IP address to commit the accused copyright infringement is not relevant in the context of a motion to dismiss. Instead, <u>at this time, the Plaintiff merely has to state a plausible claim.</u> Thus, while it is a reasonable possibility that the Defendant here did not commit any copyright infringement because another individual did so using his IP address, such as a different family member, visitor, neighbor, or passerby, it is an equally reasonable possibility that the Defendant committed the accused of act.

*Patrick Collins, Inc. v. John Doe 1*, 12-CV-1154 ADS GRB, 2013 WL 2177787 (E.D.N.Y. May 18, 2013) (emphasis added).  And, this case is fundamentally different from the cases in *In Re BitTorrent* because Plaintiff has alleged Defendant infringed, not one, but 20 of its movies over a long period of time.


   G.  <u>Defendant's Arguments Concerning Dynamic IP Addresses and Spoofing Are Speculative and Highly Unlikely</u>

Defendant's argument that his Internet may not have been used to infringe all of the movies

alleged in the complaint is based on pure speculation.  Indeed, internet service providers ("ISP") rarely utilize changing dynamic IP addresses.  As an example, Comcast Customer Care, a large ISP similar to Verizon specifically notes that "[a]s an . . . Internet subscriber, you're given an Internet protocol (IP) address assigned by a Dynamic Host Configuration Protocol (DHCP) server. While not permanent, your *IP address doesn't change often*."[1] (Emphasis added).  Further, the chances that two or more individuals were assigned the same IP address and also using BitTorrent to engage in the same illegal behavior infringing Plaintiff's movies is highly unlikely and based on pure speculation.

IPP's software established a direct TCP/IP connection with the John Doe Defendants' IP address.  When a direct TCP/IP connection is established, it is impossible for an individual to hide, fake, mask, or spoof his or her IP address because that individual's computer directly connects with IPP's server.  At trial, Plaintiff's investigator, Tobias Fieser, will testify to this fact.  And, Plaintiff plans on submitting a report by independent experts that will verify that IPP's technology works.

Toward that end, courts have found that theories of "spoofing" or "hacking" Defendants internet "are speculative and unsupported by any record evidence."  *Malibu Media, LLC v. Fitzpatrick*, 1:12-CV-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013).  Here, Defendant's argument that his Internet was "spoofed" or suffered from a dynamic IP address is pure speculation and nothing more than a denial of infringement.  If Plaintiff proceeds against Defendant he may raise this argument as a defense.

H.  Defendant's Argument Regarding "One or More Bit" are Irrelevant and Speculative

---

[1] *See* http://customer.comcast.com/help-and-support/internet/releasing-and-renewing-ip-address/

Defendant's argument that the subpoena should be quashed because Plaintiff's investigator only downloaded "one or more bit" lacks merit. Indeed, this argument is nothing more than a denial that the Defendant's Internet downloaded the entire movie. And, it lacks a fundamental understanding of how BitTorrent works. As courts have explained, the nature of the BitTorrent protocol is that infringers download the movie piecemeal. "When a person uses BitTorrent to download a file, such as a movie, the person usually will not obtain a full copy of the movie from one other computer. Instead, the user will obtain pieces of the movie from multiple computers in the swarm. Once the user has obtained all the pieces, the BitTorrent computer program, which is running on the user's computer, assembles the pieces into a completed file, allowing the user to view the movie." *Malibu Media, LLC v. Doe*, No. 13-C-0213, 2013 WL 5876192, at *1 (E.D. Wis. Oct. 31, 2013). "Critically, it is possible to download pieces from peers who themselves are still downloading other pieces of the movie (and thus do not have a full copy of the movie) because the BitTorrent software, by default, immediately offers for download any piece it has downloaded (and verified using the digital fingerprint). (Compl. ¶¶ 30–34.) That is, sharing is piecemeal." *Malibu Media LLC v. John Does 1-28*, No. 12-CV-12598, 2012 WL 7748917, at *2 (E.D. Mich. Oct. 31, 2012).

Here, the claim that Defendant downloaded the entire movie is certainly plausible and likely true because the point of using BitTorrent is to download the entire movie. Indeed, the Eastern District of Wisconsin examined this exact issue and found "someone who starts downloaded a movie intends to watch the movie, and thus the person will likely download the full movie", finding Plaintiff's claim plausible. *Malibu Media, LLC v. Doe*, No. 13-C-0213, 2013 WL 5876192, at *2 (E.D. Wis. Oct. 31, 2013)

> Defendant notes that it is possible that he copied only the pieces obtained by the investigator rather than full versions of all nineteen movies. However, the fact that

this is possible does not render plaintiff's claim implausible. Presumably, someone who starts downloading a movie intends to watch the movie, and thus the person will likely download the full movie. <u>This means that there is a nonnegligible probability that a user who has a piece of a file constituting a movie on his computer also has the remaining pieces.</u> It is not certain that the user will have the remaining pieces—perhaps the person changed his or her mind before downloading the full movie or other circumstances prevented the person from downloading the full movie. But at the pleading stage certainty is not required.

*Id*.  (Emphasis added).

### I.   Plaintiff's Complaint Has Always Survived A Motion to Dismiss

Plaintiff's lawsuit is not frivolous.   Indeed, in every case where Plaintiff has been challenged with a 12(b)(6) motion, the court has found Plaintiff stated a plausible claim.  *See e.g. Malibu Media, LLC v. John Doe 1,* 2013 WL 30648 at *4 (E.D. Pa. 2013) ("Accepting all factual allegations in the Amended Complaints as true . . . the Court concludes Plaintiff has stated a claim upon which relief can be granted under the Copyright Act."); *Malibu Media, LLC v. Roldan*, 8:13-CV-3007-T-30TBM, 2014 WL 3805494 (M.D. Fla. Aug. 1, 2014) ("Plaintiff has alleged a plausible link between the subscriber assigned to IP address 96.58.134.12, Defendant, and the copyright infringement"); *Malibu Media, LLC v. Doe*, 313-CV-1579-J-32PDB, 2014 WL 2530872 (M.D. Fla. Apr. 10, 2014) ("[i]ts allegations, based on experience and practical realities, make plausible that the subscribers are the infringers"); *Malibu Media v. Roy*, Case No. 12-cv-617 (W.D. Mich.) (denying 12(b)(6) motion);*Malibu Media v. Pratt*, 1:12-cv-00621-RJJ, CM/ECF 31 (W.D. Mich. March 19, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. Lowry*, 2013 WL 6024371, at *5 (D. Colo. 2013) (same);*Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 at *4 (E.D. Pa. 2013) (same); *Malibu Media, LLC v. Killoran*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-00055-JVB-JEM, CM/ECF 22 (N.D. Ind. August, 16, 2013) (same);  *Malibu Media LLC v. Doe*, 2013 WL 3945978

(E.D. Mich. 2013) (same); *Malibu Media LLC v. Gilvin*, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (same); *Malibu Media, LLC v. Sanchez*, 2014 WL 172301 (E.D. Mich. Jan. 15, 2014) (same); *Malibu Media, LLC v. Butler*, 13-cv-02707-WYD-MEH, CM/ECF 31 (D. Colo. April 24, 2014) (same).

Further, Plaintiff's complaint has survived summary judgment. *See Malibu Media, LLC v. Fitzpatrick*, 1:12-CV-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013). And, Plaintiff has been awarded summary judgment in its favor. *See Malibu Media v. Bui*, 1:13-cv-163 (W.D. Mich. July 21, 2014). Plaintiff has even prevailed at trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ("Malibu has satisfied its burden of proof with substantial evidence and deserves a large award.")

If the Court were to follow Defendant's rationale, copyright holders would be unable to bring actions for copyright infringement on the Internet. This holding would be contrary to the express policy of Congress. Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore. *See Sony v. Tennenbaum*, 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers. *See In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010). The Register of Copyrights testified before Congress that entertainment companies have the right to sue for peer to peer infringement and they should not

apologize for doing so.[2]   Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer.   *See e.g., Sony Music Entertainment, inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).   The only way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet was used to commit the infringement.

The only way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet was used to commit the infringement.   And, in order to do so, a copyright holder must file a federal lawsuit and establish personal jurisdiction and venue by utilizing geolocation technology.   With out this ability, copyright owners would have a right without a remedy.   Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury."   *Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).   Chief Justice Marshall continued "[t]he government of the United States has been emphatically termed a government of laws, and not of men.   It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."   *Id.*   The U.S. still deserves that high appellation because it steadfastly creates remedies when vested rights have been infringed.   The case in front of the bar is no exception, our government and laws provide copyright owners with the ability to ascertain the identity of infringers through a Rule 45 subpoena when, as here, there is a reasonably likelihood that Defendant resides in this district.

---

[2] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

Dated:  November 13, 2014

Respectfully submitted,

MALIBU MEDIA, LLC.
PLAINTIFF

By:   /s/*William E. Tabot*
William E. Tabot, Esquire #39488
William E. Tabot, Esquire, PC
9248 Mosby Street
Manassas, Virginia 20110
Tel: (709) 530-7075
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   /s/*William E. Tabot*