UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14cv1169 (TSE/JFA) |
| | ) | |
| JOHN DOE subscriber assigned IP address, | ) | |
| 70.109.60.2, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION AND
TO QUASH THIRD-PARTY SUBPOENA**

Defendant JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 70.109.60.2 ("John

Doe"), by counsel, offers the following Reply in further support of his Motion for

Reconsideration of the Court's September 16, 2014 Order [ECF No. 6] and to Quash the third-

party subpoena served by Plaintiff Malibu Media, LLC ("Malibu Media") on Verizon Online,

LLC ("Verizon"):

**Argument**

**I.     Malibu Media Misrepresents its Purpose in Obtaining Extraordinary Discovery.**

Malibu Media's Memorandum in Support of its Motion for Leave to Serve a Third Party

Subpoena Prior to a Rule 26(f) Conference [ECF No. 4] contended that the extraordinary

discovery sought was necessary for the following reason: "Without this information, Plaintiff

cannot serve the Defendant nor pursue this lawsuit [.]"  Id. at 4.  Malibu Media sought "specific

information that is in the possession of the Defendant's ISP that will enable Plaintiff to serve

process on Defendant."  Id. at 6.

1

That is not really why Malibu Media sought extraordinary discovery.  Malibu Media does not subpoena internet service providers for subscriber information intending to then serve process and litigate its claims.  A passing review of Malibu Media's thousands of litigation dockets on PACER exposes that, in most cases, discovery of a Doe defendant's contact information is the only use Malibu Media has for the federal court system.  Malibu Media's litigation in this District illustrates the point:

Although Malibu Media has already settled fifty-four of the cases that it filed in the Alexandria Division this year, PACER reflects that the Clerk issued a Summons in only two of the fifty-four dismissed cases.  These were all cases where Malibu Media sought and obtained the same extraordinary discovery that it seeks here.  These statistics belie Malibu Media's claim that it seeks extraordinary discovery to enable it to serve complaints and litigate its claims.  The statistics are also irreconcilable with Malibu Media's statement that "Plaintiff does not solicit settlements prior to serving a defendant with the Complaint."  Pl.'s Br. 9.

In the instant case, Malibu Media has already signaled that identifying John Doe through extraordinary discovery does not mean it will then serve a Complaint and litigate this case; rather, it will embark on some other investigation and perhaps lean on John Doe to provide information identifying a different potential infringer:

> "*It is likely Defendant* is either the infringer or *knows who the infringer is and can provide Plaintiff with relevant information to aid Plaintiff in identifying the infringer*." Id. at 7 (emphasis added).

> Upon learning Defendant's identity, if it has a proper basis to proceed and litigate the case *after an investigation*, Plaintiff will do so." Id. at 12 (emphasis added).

This is not the path that Malibu Media presented to the Court when it petitioned for extraordinary discovery.  The judges of this Court have granted Malibu Media's motions for extraordinary

discovery in the past on the representation that it seeks subscriber information in order to then serve process and actually litigate cases.  That representation does not match Malibu Media's conduct.  The Court need not, and should not, grant extraordinary discovery to a serial plaintiff who does not intend to pursue its claims in court.

## II.      Malibu Media's Litigation Scheme is Abusive.

Malibu Media has filed 29 additional cases in the Alexandria Division (and 129 new cases nation-wide) in the three weeks since this motion was filed.  For Malibu, it's a numbers game; and this Motion should be viewed with that reality as a backdrop.  John Doe is not "ignoring the rights of copyright owners to sue for infringement[,]" or "[i]nappropriately belittl[ing] efforts of copyright owners to seek injunctions and damages. Id. at 3.

If Malibu Media were truly "not filing this case for any purpose other than to protect its valid copyrights[,]" that would be one thing. Id. at 1.  Yet its litigation track record demonstrates beyond a doubt that Malibu Media is more interested in leveraging immediate settlements, *en masse*, from Internet subscribers who may be innocent, than in identifying proper John Doe defendants and obtaining injunctive or monetary relief through the courts.  It would be cost-prohibitive for Malibu Media to pursue its thousands of cases even to the point of obtaining physical or testimonial evidence of infringement by a particular person.  So Malibu Media instead uses ISP subscribers as a proxy source of settlement funds.

This court, together with others throughout the federal system, is confronted with the asserted right of one business to wreak havoc in the lives of thousands, to consume tremendous judicial resources, and to secure questionable settlements aggregating in excess of the limits contemplated by Congress.  In light of Malibu Media's unique manipulation of the federal court system, it is not at all unreasonable or unfair for the Court to apply the relevant procedural

requirements with greater attention and stricter scrutiny than might befit a litigant who does not have thousands of lawsuits pending nationwide to use the judiciary as a tool facilitating immediate settlements.

In the instant case, the best way to bring that heightened attention to bear is to reconsider the Court's September 16, 2014 Order permitting extraordinary discovery. Absent reconsideration, the Court already knows what results will follow: not further litigation on the merits, not justice, just additional easy money for Malibu Media without regard for John Doe's actual culpability and reputation.[1]

### III.   Malibu Media Makes Too Much of the "Bellwether" Trial and Takes Liberties With its Litigation History in an Attempt to Bolster its Reputation.

Malibu Media's Opposition states that "[l]ast year, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial." Pl.'s Br. 3 (citing Malibu Media, LLC v. John Does 1, 6, 13, 14 and White, 950 F. Supp. 2d 779 (E.D. Pa. 2013). That statement is potentially misleading. The proceeding referenced by Malibu Media was for little more than show. It also came about precisely because the federal judge there found that Malibu Media's conduct indicated a lack of intent to litigate its claims or to proceed to trial:

> [I]t appears that Plaintiff has served the subpoenas allowed by this Court on the ISPs, and has received information enabling Plaintiff to serve the Complaints on certain John Does. However, the record does not show that Plaintiff has, in fact, served a Complaint on any John Doe.

---

[1] Malibu Media takes offense at John Doe's contention that it seeks to embarrass him in the hopes of obtaining a settlement: "Malibu Media has no intention of embarrassing Defendant." Pl.'s Br. 8. John Doe will undoubtedly petition the court to proceed anonymously if this litigation continues. However, it bears noting that John Doe is already irreparably embarrassed within the circle of his family and friends as a result of this lawsuit. While public exposure would heighten the embarrassment, even the *anonymous* defense of a salacious lawsuit of this nature is a reputational (and financial) blow to this "John Doe" and to the thousands of others who may have done nothing wrong, yet are grist for Malibu Media's settlement mill.

Malibu Media, LLC, v. John Does 1, 6, 13, 14 and White, 902 F. Supp. 2d 690, 693 (E.D. Pa. 2012); id. at 695-696 ("Plaintiff's strategy is, after initiating the lawsuits, to seek leave to serve third-party subpoenas on the ISPs to obtain identification information for the IP addresses specified[.] […] In this fashion, Plaintiff has initiated hundreds of lawsuits in various district courts throughout the country, but has not yet proceeded to trial in any case.").

The judge selected a handful of Malibu Media cases pending in that district, combined them, and directed Malibu Media to prepare them for a bellwether trial.  In the course of pre-trial procedures, two of the defendants settled, leaving three defendants for trial.  Shortly before trial, Malibu Media then informed the court that (1) it had settled with two of the remaining defendants but wanted the court to enter a "final judgment" against them; and (2) the only remaining defendant had admitted liability and reached a high/low damages settlement with Malibu Media. White, No. 12-cv-2088, ECF Nos. 100, 101 & 102 (E.D. Pa. June 17, 2013). Malibu Media was the only party to put on witnesses at trial.  The defendants did not cross-examine Malibu Media's witnesses or test their methods and evidence.  In sum, there was little at issue during this one-day bench trial: all defendants had previously conceded liability and agreed on damages.

Similarly, although Malibu Media touts two cases nationwide that have actually involved summary judgment proceedings, the Order denying summary judgment in one of those cases reveals that Malibu Media survived summary judgment in that case notwithstanding its failure to engage in discovery to generate *any* real or testimonial evidence that the defendant downloaded or redistributed the copyrighted works.  See Malibu Media, LLC v. Fitzpatrick, 1:12-cv-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013).  Despite its protestations to the contrary, Malibu

Media simply does not have a track record of actually litigating its cases with trial, or earlier dispositive proof of infringement, in mind.  Its cases are filed to embarrass, threaten, and settle.

IV.     **The Excerpts Cited by Defendant From Opinions in Earlier BitTorrent Cases Remain Applicable.**

Malibu Media asserts that many of the cases excerpted in John Doe's Memorandum in Support of this Motion are distinguishable because they involved suits against large groups of Doe defendants (also identified solely by IP address), rather than the single defendant sued here. Notwithstanding the difference in the number of alleged infringers joined, the legal reasoning excerpted by John Doe remains on point.  The recent dismissals discussed above demonstrate that suing Doe defendants individually has not made Malibu Media any more interested in actually *litigating* the cases than when it sued hundreds in a single action.

Some district courts in 2012 perhaps wrongly assumed a different result would follow from requiring individual lawsuits:  that mass plaintiffs like Malibu Media would be reluctant to pay a federal filing fee for a single defendant case just to obtain the name associated with an IP address.  Unfortunately, as before, Malibu Media continues to first leverage the courts' subpoena powers to obtain subscriber information, then to leverage the threat of costly litigation for immediate settlements out of court, without any intent to prove the cases it files.

Good cause does not exist for the Court to grant extraordinary discovery in these circumstances.  To do so, despite knowing that Malibu Media does not actually intend to litigate these cases in court, is to advantage a corporate party engaging in predatory behaviors over potentially thousands of wrongly accused Doe defendants.  No public policy or intent of Congress requires the Court to bend its procedural rules to advantage a litigation scheme not ultimately designed to obtain justice from the Court.

## Conclusion

For the foregoing reasons and those briefed in his Memorandum in Support, John Doe respectfully requests that the Court reconsider its earlier Order permitting Malibu Media to serve a third-party subpoena on Verizon, that the Court quash the outstanding subpoena, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/  Ryan C. Berry_____
Ryan C. Berry (Virginia Bar No. 67956)
Greenberg Traurig LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Telephone: 703.749.1369
Facsimile: 703.714.8388
berryr@gtlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

William Egbe Tabot, Esq.
William E. Tabot PC
9248 Mosby Street
Manassas, Virginia 20110-5038
703-530-7075
Fax: 703-530-9125
wetabotesq@wetlawfirm.com

*Counsel for Plaintiff*

/s/  Ryan C. Berry_____
Ryan C. Berry

8